**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| GLENN HUTTON, Derivatively on Behalf of Nominal Defendant F5 NETWORKS, INC., ) ) | Case No. _____ |
| ) | |
| Plaintiff, ) | PLAINTIFF'S VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT |
| ) | |
| vs. ) | |
| ) | |
| JOHN MCADAM, KARL D. GUELICH, ALAN J. HIGGINSON, KEITH D. GRINSTEIN, RICH MALONE, A. GARY AMES, JEFF PANCOTTINE, EDWARD EAMES, TOM HULL STEVE COBURN, JOANN M. REITER, JEFFREY S. HUSSEY, STEVEN GOLDMAN, and BRETT L. HELSEL, ) ) ) ) ) ) ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | JURY TRIAL DEMANDED |
| ) | |
| F5 NETWORKS, INC., ) | |
| ) | |
| Nominal Defendant. ) | |

Plaintiff, by his attorneys, submits this Derivative Complaint (the "Complaint") against the Defendants named herein.

## NATURE AND SUMMARY OF THE ACTION

1. This is a shareholder derivative action brought by Plaintiff for the benefit of Nominal Defendant F5 Networks, Inc. ("F5" or the "Company") against Individual

Defendants for breaches of their fiduciary duties, unjust enrichment, statutory violations, and other violations of law.

2.      In gross breach of their fiduciary duties as officers and/or directors of F5, the Individual Defendants colluded with one another to:

      a.      improperly backdate grants of F5 stock options to Defendant John McAdam, the Company's President, Chief Executive Officer, and a director and several other F5 executives and directors, in violation of the Company's shareholder-approved stock option plans;

      b.      improperly record and account for the backdated stock options, in violation of Generally Accepted Accounting Principles;

      c.      improperly take tax deductions based on the backdated stock options, in violation of Section 162(m) of the Tax Code;

      d.      produce and disseminate to F5 shareholders and the market false financial statements and other SEC filings that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options.

3.      As a result of the Individual Defendants' egregious misconduct, F5 has sustained millions of dollars in damages, and Defendant McAdam and the other recipients of the backdated stock options have garnered millions of dollars in unlawful profits.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 in that this Complaint states a federal question. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA  98166
(206) 241-2875

5.     Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district.  One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

## PARTIES

6.     Plaintiff Glenn Hutton, is, and was at all relevant times, a shareholder of nominal defendant F5.

7.     Nominal Defendant F5 is a Washington corporation with its principal executive offices located at 401 Elliott Avenue West, Seattle, Washington 98119.  F5 purports to be the global leader in Application Delivery networking.

8.     Defendant John McAdam ("McAdam") has served as the President, CEO and a member of the Board of Directors of the Company since July 2000.  McAdam received backdated stock options.

9.     Defendant Karl D. Guelich ("Guelich") has served as a member of the Board of Directors of the Company since June 1999.

10.     Defendant Alan J. Higginson ("Higginson") has served as a member of the Board of Directors of the Company since April 2004.

11.     Defendant Keith D. Grinstein ("Grinstein") has served as a member of the Board of Directors of the Company since December 1999.

12.     Defendant Rich Malone ("Malone") has served as a member of the Board of Directors of the Company since August 2003.

SHAREHOLDER DERIVATIVE COMPLAINT
Case No.:

Page 3

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA  98166
(206) 241-2875

13.     Defendant A. Gary Ames ("Ames") has served as a member of the Board of Directors of the Company since July 2004.

14.     Defendant Jeff Pancottine ("Pancottine") has served as Senior VP and General Manager, Security Business Unit of the Company since October 2000. Pancottine received backdated stock options.

15.     Defendant Edward Eames ("Eames") has served as Senior VP of Business Operations and Global Services since January 2001, and as VP Professional Services from October 2000 to January 2001.   Eames received backdated stock options.

16.     Defendant Tom Hull ("Hull") has served as Senior VP of Worldwide Sales for the Company since October 20, 2003.  Hull received backdated stock options.

17.     Defendant Steve Coburn ("Coburn") has served as Senior VP and CFO of the Company from May 2001 until the end of 2005.  Coburn received backdated stock options.

18.     Defendant Joann M. Reiter ("Reiter") has served as VP and General Counsel since April 2000, and was General Counsel from April 1998 through April 2000. She has served as the corporate Secretary since June 1999.   Reiter received backdated stock options.

19.     Defendant Jeffrey S. Hussey ("Hussey") is a co-founder of the Company and  has served as a member of the Board of Directors, CEO and President.  Hussey received backdated stock options.

SHAREHOLDER DERIVATIVE COMPLAINT
Case No.:

Page 4

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA  98166
(206) 241-2875

20.     Defendant Steven Goldman ("Goldman") served as Senior VP of Sales and Services from July 1999 until August 2003.  Goldman received backdated stock options.

21.     Defendant Brett L. Helsel ("Helsel") served as Senior VP Product Development and CTO from December 2000 until his resignation.  He also served as Senior VP of Product Development form February 2000 to December 2000 and as VP Product Development and CTO from May 1998 to January 2000.  Helsel received backdated stock options.

22.     Defendants McAdam, Guelich, Higginson, Grinstein, Malone, Ames, Pancottine, Eames, Hull, Coburn, Reiter, Hussey, Goldman and Helsel are collectively referred to hereinafter as the "Individual Defendants."  Defendants McAdam, Pancottine, Eames, Hull, Coburn Reiter, Hussey, Goldman and Helsel are referred to hereinafter as the "Officer Defendants."  Defendants Ames, Grinstein, Guelich, Higginson, and Malone are collectively referred to hereinafter as the "Committee Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of F5's quarterly reports and press releases.  Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them but not the public, each of these Individual Defendants knew that adverse facts specified herein had not been disclosed and were being concealed from the public and

SHAREHOLDER DERIVATIVE COMPLAINT
Case No.:

Page 5

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA  98166
(206) 241-2875

that positive representations which were being made were then materially false and misleading.

23.     The Individual Defendants, as senior officers and/or directors, of F5, were controlling persons of the Company.  Each exercised their power and influence to cause F5 to engage in fraudulent practices complained herein.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

24.     By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

25.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

26.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management,

SHAREHOLDER DERIVATIVE COMPLAINT
Case No.:

Page 6

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA  98166
(206) 241-2875

policies, practices and controls of the Company.  By virtue of such duties, the officers and directors of the Company were required to, *inter alia*:

    a.    exercise good faith in ensuring that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

    b.    exercise good faith in ensuring that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

    c.    exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the Company; and

    d.    exercise good faith in ensuring  that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and

    e.    refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

27.    The Individual Defendants were responsible for maintaining and establishing adequate internal accounting controls for the Company and to ensure that the Company's financial statements were based on accurate financial information. According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure.   Among other things, the Individual Defendants were required to:

    (1)    make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA  98166
(206) 241-2875

(2)     devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

       (a)     transactions are executed in accordance with management's general or specific authorization;

       (b)     transactions are recorded as necessary to permit preparation of financial statements in conformity with [GAAP].

## FACTUAL ALLEGATIONS

### Stock Option Grants to the Officer Defendants

28.     During the Relevant Period, Defendants Ames, Grinstein, Guelich, Higginson, and Malone were members of the Compensation Committee. At all times relevant hereto the Compensation Committee determined the salaries, incentive compensation, and stock option awards for the Officer Defendants and administered the Company's stock option plans.

29.     Between 1998 and the present, the Compensation Committee granted certain F5 stock options to the Individual Defendants, as follows:

| Officer | Date of Grant | Purported Exercise Price | Number of Options |
|---------|---------------|--------------------------|-------------------|
| Steven Goldman | 10/28/1998 | $0.75 | 50,438 |
| | 01/01/1999 | $1.50 | 99,560 |
| | 12/31/1999 | $114.00 | 17,500 |
| | 03/31/2000 | $67.75 | 17,500 |
| | 06/30/2000 | $54.56 | 17,500 |
| | 10/01/2000 | $34.00 | 17,500 |
| | 01/01/2001 | $9.50 | 50,000 |
| | 04/27/2001 | $7.00 | 40,000 |
| | 05/06/2002 | $11.12 | 70,000 |
| | 05/08/2003 | $14.64 | 55,000 |
| Brett L. Helsel | 10/28/1998 | $0.75 | 33,626 |
| | 01/01/1999 | $1.50 | 62,374 |
| | 12/31/1999 | $114.00 | 12,500 |

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA 98166
(206) 241-2875

| | | | |
|---|---|---|---|
| | 03/31/2000 | $67.75 | 12,500 |
| | 06/30/2000 | $54.56 | 12,500 |
| | 09/29/2000 | $34.00 | 12,500 |
| John McAdam | 07/24/2000 | $42.56 | 645,000 |
| | 07/24/2000 | $1.00 | 50,000 |
| | 01/01/2001 | $9.50 | 100,000 |
| | 03/16/2001 | $5.03 | 375,000 |
| | 04/27/2001 | $7.00 | 270,000 |
| | 05/06/2002 | $11.12 | 200,000 |
| | 05/08/2003 | $14.64 | 160,000 |
| | 04/30/2004 | $25.49 | 100,000 |
| Jeffrey S. Hussey | 10/20/1999 | $85.50 | 110,000 |
| | 10/20/1999 | $85.50 | 140,000 |
| | 04/27/2001 | $7.00 | 70,000 |
| Jeff Pancottine | 10/23/2000 | $33.00 | 150,000 |
| | 01/01/2001 | $9.50 | 60,000 |
| | 04/27/2001 | $7.00 | 40,000 |
| | 05/06/2002 | $11.12 | 70,000 |
| | 05/08/2003 | $14.64 | 55,000 |
| | 04/30/2004 | $25.49 | 40,000 |
| Steven Coburn | 05/06/2002 | $11.12 | 70,000 |
| | 05/08/2003 | $14.64 | 55,000 |
| | 04/30/2004 | $25.49 | 40,000 |
| Edward Eames | 05/06/2002 | $11.12 | 70,000 |
| | 05/08/2003 | $14.64 | 55,000 |
| | 04/30/2004 | $25.49 | 40,000 |
| Joann Reiter | 05/08/2003 | $14.64 | 55,000 |
| Tom Hull | 10/20/2003 | $23.69 | 225,000 |
| | 04/30/2004 | $25.49 | 40,000 |

30.   Pursuant to the terms of the Company's shareholder-approved stock option plans, the exercise price of options are equal to the fair market value of the common stock on the day of the option grant.

31.   Pursuant to APB 25, the applicable GAAP provision at the time of the foregoing stock option grants, if the market price on the date of grant exceeds the

SHAREHOLDER DERIVATIVE COMPLAINT
Case No.:

Page 9

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA  98166
(206) 241-2875

exercise price of the options, the company must recognize the difference as an expense.

32.    Pursuant to Section 162(m) of the Tax Code, 26 U.S.C. § 162(m) ("Section 162(m)"), compensation in excess of $1 million per year, including gains on stock options, paid to a corporation's five most highly-compensated officers is tax deductible only if: (i) the compensation is payable solely on account of the attainment of one or more performance goals; (ii) the performance goals are determined by a compensation committee comprised solely of two or more outside directors, (iii) the material terms under which the compensation is to be paid, including the performance goals, are disclosed to shareholders and approved by a majority of the vote in a separate shareholder vote before the payment of the compensation, and (iv) before any payment of such compensation, the compensation committee certifies that the performance goals and any other material terms were in fact satisfied.

33.    All of the foregoing stock option grants was dated just after a sharp drop and just before a substantial rise in F5's stock price, as demonstrated in the following chart:

| Purported Date of Grant | Exercise Price | Stock Price 10 Trading Days Before Grant | Stock Price 10 Trading Days After Grant | % Rise in Stock Price After Grant |
|---|---|---|---|---|
| 10/01/1999 | $68.06 | $68.75 | $75.00 | 10.2% |
| 10/20/1999 | $85.50 | $80.25 | $148.50 | 73.7% |
| 12/31/1999 | $114.00 | $115.81 | $98.00 | (14.0%) |
| 02/10/2000 | $89.50 | $107.50 | $93.50 | 4.5% |
| 03/31/2000 | $67.75 | $95.25 | $44.25 | (34.7%) |
| 06/30/2000 | $54.56 | $42.81 | $53.50 | (1.9%) |
| 07/24/2000 | $42.56 | $44.00 | $45.75 | 7.5% |
| 09/29/2000 | $34.00 | $41.75 | $29.56 | (13.1%) |
| 10/01/2000 | $34.00 | $39.50 | $29.56 | (13.1%) |
| 10/23/2000 | $33.00 | $32.00 | $36.00 | 9.1% |
| 01/01/2001 | $9.50 | $21.88 | $11.50 | 21.0% |

SHAREHOLDER DERIVATIVE COMPLAINT
Case No.:

Page 10

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA  98166
(206) 241-2875

| 03/16/2001 | $5.03 | $5.69 | $4.58 | (8.9%) |
| 04/27/2001 | $7.00 | $5.30 | $11.45 | 63.6% |
| 05/06/2002 | $11.12 | $13.08 | $12.70 | 14.2% |
| 05/08/2003 | $14.64 | $14.10 | $15.90 | 8.6% |
| 10/20/2003 | $23.69 | $21.80 | $25.74 | 8.7% |
| 04/30/2004 | $25.49 | $30.80 | $27.02 | 6.0% |

34.     The reason for the pattern set forth in the preceding paragraph is that the purported grant dates set forth therein were not the actual dates on which the stock option grants were made.  Rather, at the behest of the Officer Defendants, the members of the Compensation Committee improperly backdated the stock option grants to make it appear as though the grants were made on dates when the market price of F5 stock was lower than the market price on the actual grant dates.  This improper backdating, which violated the terms of the Company's shareholder-approved stock option plans, resulted in option grants with lower exercise prices, which improperly increased the value of the options to the Officer Defendants and improperly reduced the amounts the Officer Defendants had to pay the Company upon exercise of the options.

### Dissemination of False and Misleading Financial Statements

35.     As a result of the improper backdating of stock options, the Company, with the knowledge, approval, and participation of each of the Individual Defendants,

    a.     violated the terms of the Company's shareholder-approved stock option plans;

    b.     violated GAAP by failing to recognize compensation expenses incurred when the improperly backdated options were granted;

    c.     violated Section 162(m) by taking tax deductions based on stock option grants that were not payable solely on account of the attainment of one or more performance goals and violated the terms of the Company's shareholder-approved stock option plans; and

SHAREHOLDER DERIVATIVE COMPLAINT
Case No.:

Page 11

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA  98166
(206) 241-2875

d.   produced and disseminated to F5 shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants.

36.   The Company, with the knowledge, approval, and participation of each of the Individual Defendants, disseminated its false financial statements in, *inter alia*, the following Form 10-K filings:

a.   Form 10-K for fiscal year ended September 30, 2005, filed with the SEC on December 13, 2005 and signed by Defendants McAdam, Ames, Grinstein, Guelich, Higginson and Malone;

b.   Form 10-K for fiscal year ended September 30, 2004, filed with the SEC on December 7, 2004 and signed by Defendants McAdam, Coburn, Ames, Grinstein, Guelich, Higginson and Malone;

c.   Form 10-K for fiscal year ended September 30, 2003, filed with the SEC on October 30, 2003 and signed by Defendants McAdam, Coburn, Grinstein, Guelich, Higginson,  Hussey and Malone;

d.   Form 10-K for fiscal year ended September 30, 2002, filed with the SEC on December 19, 2002 and signed by Defendants McAdam, Coburn, Hussey, Grinstein, Guelich and Higginson;

e.   Form 10-K for fiscal year ended September 30, 2001, filed with the SEC on December 28, 2001 and signed by Defendants McAdam, Coburn, Hussey, Grinstein, Guelich and Higginson;

f.   Form 10-K for fiscal year ended September 30, 2000, filed with the SEC on December 13, 2000 and signed by Defendants McAdam, Hussey, Grinstein, Guelich and Higginson;

g.   Form 10-K for fiscal year ended September 30, 1999, filed with the SEC on December 28, 1999 and signed by Defendants Hussey, Grinstein, Guelich and Higginson.

37.   Furthermore, from 1999 to the present, the Company, with the knowledge, approval, and participation of each of the Individual Defendants, for the purpose and with the effect of concealing the improper option backdating:

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA  98166
(206) 241-2875

a.   disseminated to shareholders and filed with the SEC annual proxy statements that falsely reported the dates of stock option grants to the Officer Defendants; and

b.   filed with the SEC Form 4 filings that falsely reported the dates of stock option grants to Officer Defendants.

38.   On May 23, 2006, *The Hartford Courant* published an article under the headline "5 More Firms' Option Practices Unusual" that described stock option backdating practices:

*     *     *

Stock options have long been a popular carrot to dangle before top executives, giving them a stake in improving the shareholders' lot. The idea: The executives make money only if the share price rises. Typically, options for top executives can be granted only by the board or its compensation committee, and are supposed to carry a "strike," or exercise, price equal to the market value at the time the options are approved by directors. A recipient sometimes must wait a year or more for the option to "vest," then can cash out the option if the share price is above the option's strike price.

But backdating - deliberately moving the grant date earlier, to a more beneficial time when the price was lower - in effect gives the executive an instant paper profit, undermining the incentive purpose of options. Companies caught backdating risk disclosure and securities-fraud violations. Executives who perpetrate such a scheme can face wire fraud and other criminal charges.

It is not yet clear how backdating may have been carried out. Grants typically are approved in writing by directors, and it's possible that in some cases documents were altered. Vitesse Semiconductor Corp. has fired three executives over the "integrity of documents" related to options. It's also possible that executives took advantage of directors' inattentiveness to secure retroactively priced grants, or directors may have knowingly approved a grant carrying an earlier date.

Under accounting rules that were in effect until recently, issuing a below-market option should trigger extra compensation expense, reducing a company's net income. Companies that failed to record that expense may have to restate their financial results, in some

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA  98166
(206) 241-2875

cases going back many years. Backdating also could run afoul of complex tax laws, requiring companies and individuals to pay back taxes and penalties.

\*      \*      \*

39.     On May 22, 2006, the Company announced that it had been served with a grand jury subpoena issued by the U.S. District Court for the Eastern District of New York and also that it had received notice from the SEC of an informal inquiry relating to the backdating of options.

40.     On May 26, 2006, the *Seattle Times* published a story entitled "Some F5 Options Show Pattern" which stated, in part, as follows:

> For three years in a row, F5 Networks' stock-option grants were particularly well timed — some would say suspiciously so.
>
> As the company's stock price zigzagged through highs and lows in the early part of the decade, executives repeatedly received options at relatively low prices, boosting their potential value.
>
> Now, the timing of those option grants has brought the Seattle company a grand jury subpoena and an inquiry by the Securities and Exchange Commission.
>
> \*      \*      \*
>
> In F5's case, it's not known specifically what the SEC and the grand jury are looking at.
>
> However, analysis of the company's financial reports and stock-price history shows several instances in which options were granted on the same day the stock was at a two-month low. Such coincidences may have raised investigators' suspicions.
>
> \*      \*      \*
>
> In the wider investigation, the Securities and Exchange Commission, the Justice Department and the IRS are believed to be looking into several related issues:

SHAREHOLDER DERIVATIVE COMPLAINT
Case No.:

Page 14

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA  98166
(206) 241-2875

• Whether corporate managers backdated options or otherwise timed their grants so that executives could take advantage of sharp moves up or down in the stock price.

• Whether the value of option grants was properly accounted for in company financial statements and publicly disclosed.

• Whether, if any of the above is true, companies or their executives owe federal income tax.

Without access to internal corporate records, such as minutes of board meetings, it's not possible to determine definitively whether a company deliberately manipulated its options grants to guarantee a big payday for its executives.

However, a pattern of grants whose dates coincide with low points in the stock price, or that precede sharp price increases, could suggest there was more than good luck at work.

"Statistically to happen to make a single year's grant on a 20-day low might just be good luck, but it's highly unlikely it would happen more than once," said Fred Whittlesey, a principal at Compensation Venture Group, a Seattle firm that advises companies on compensation.

With F5, it happened four times from 2000 to 2002. At least three other option grants in that period were made at significant dips or before a price run-up.

For example, in its public filings, F5 has said Chief Executive John McAdam received three options grants in 2001: 100,000 options on Jan. 1; 375,000 on March 16; and 270,000 on April 27.

The first grant was on the stock's lowest day within a two-month period; the second came after a steep fall in the share price; the third shortly after F5 stock began what turned out to be a long rise.

And on May 6, 2002, F5 granted McAdam and four other top executives 480,000 options. On that date, F5 shares were at their lowest point in seven months.

Until the Sarbanes-Oxley reforms of 2002, company executives could wait as long as 30 days to report buying or selling stock or receiving or exercising options, said Lynn Turner, former chief accountant at the SEC and now managing director of research at Glass Lewis, a proxy advisory firm based in San Francisco.

SHAREHOLDER DERIVATIVE COMPLAINT
Case No.:

Page 15

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA  98166
(206) 241-2875

Within that 30-day window, companies theoretically could backdate an option without publicly disclosing the fact.

Practices such as backdating, if substantiated, are harmful for several reasons, Turner said.

Stock options are meant to reward executives and employees when their work leads to a rise in the stock price. But by removing the risk from options, Turner said, backdating destroys any incentive value they might have: "By the time you've gotten the option, you already know you're in the money."

In addition, he said, options are supposed to align management's interests with shareholders. But executives with options that have been pre-set to pay off are in a far superior position to ordinary investors who buy stock without knowing when, or whether, it will go up in value.

Finally, Turner said, options that let executives buy stock at artificially low prices cheat companies — and, ultimately, shareholders — out of money they're entitled to.

"In essence," he said, "you've got a senior executive who's intentionally taking money out of the pockets of the shareholders they're supposed to be working for."

Backdating, said compensation expert Whittlesey, "involves breaking law and it involves a whole stream of false information about the nature of those grants."

Given how many companies relied on stock options, Whittlesey said, the federal net could spread much wider: "I think it might be a lot more than the 20 companies we're looking at now."

## THE INDIVIDUAL DEFENDANTS' BREACHES OF FIDUCIARY DUTIES

41.     The Officer Defendants breached their fiduciary duties by:

a.      colluding with the Committee Defendants to backdate stock option grants;

b.      colluding with the Committee Defendants to violate GAAP and Section 162(m);

c.      colluding with the Committee Defendants to produce and disseminate to F5 shareholders and the market false financial statements that improperly recorded and accounted for the

SHAREHOLDER DERIVATIVE COMPLAINT
Case No.:

Page 16

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA  98166
(206) 241-2875

backdated option grants and concealed the improper backdating of stock options; and

colluding with the Committee Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

42.    The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

43.    The members of the Compensation Committee breached their fiduciary duties by:

a.    colluding with the Officer Defendants to backdate stock option grants;

b.    colluding with the Officer Defendants to violate GAAP and Section 162(m);

c.    colluding with the Officer Defendants to produce and disseminate to F5 shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

d.    colluding with the Officer Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

44.    The Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA  98166
(206) 241-2875

## DEMAND WOULD BE FUTILE

45.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress defendants' breaches of fiduciary duties and unjust enrichment.

46.     Plaintiff is an owner of F5 common stock and was an owner of F5 common stock at all times relevant hereto.

47.     Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

48.     The Board currently consists of six directors: Defendants McAdam, Guelich, Higginson, Grinstein, Malone, and Ames.

49.     As a result of the facts set forth herein, plaintiff has not made any demand on the F5 Board of Directors to institute this action against the Individual Defendants. Such demand would be a futile and useless act because the Individual Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

**Likelihood of Substantial Liability of the Compensation Committee Defendants**

50.     Defendant Directors Ames, Grinstein, Guelich, Higginson, and Malone had enhanced responsibilities as a members of the Company's Compensation Committee. That Committee was charged with direct responsibility for determining the salaries, incentive compensation, and stock option awards for the Officer Defendants and for administering the Company's stock option plans.

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA  98166
(206) 241-2875

**Each Director Defendant Lacks Independence**

51.    Each Individual Defendant lacks the sufficient independence with which to render a disinterested decision on whether to pursue these claims against the Individual Defendants.

52.    Defendant/Directors McAdam received backdated stock option grants.  As such, he lacks the independence to decide whether to bring against the Individual Defendants.

53.    Defendant/Directors McAdam, as a current officer of the Company, lacks the independence to decide whether to bring against the Individual Defendants.

54.    Plaintiff has not made any demand on the shareholders of F5 to institute this action since demand would be a futile and useless act for the following additional reasons:

   a.    Making demand on such a number of shareholders would be impossible for Plaintiff, who has no way of finding out the names, addresses or phone numbers of all the shareholders; and

   b.    Making demand on all shareholders would force Plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

55.    Additionally, Derivative Plaintiff has not made a demand on the Board to bring these cause of actions because such a demand would be futile and useless act for the additional following reasons:

   a.    In order to bring this suit, a majority of the Directors of F5 would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand.

SHAREHOLDER DERIVATIVE COMPLAINT
Case No.:

Page 19

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA  98166
(206) 241-2875

    b.    The acts complained of constitute violations of the fiduciary duties owned by F5's officers and directors and these acts are incapable of ratification.

    c.    The actions of the directors has impaired the Board's ability to validly exercise its business judgment and rendered it incapable of reaching an independent decision as to whether to accept Plaintiff's demands.

56.    Furthermore, demand is excused because the misconduct complained of herein was not, and could not have been, an exercise of good faith business judgment.

## COUNT I

## AGAINST THE INDIVIDUAL DEFENDANTS
## FOR BREACH OF FIDUCIARY DUTY

57.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

58.    The Individual Defendants owed and owe F5 fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe F5 the highest obligation of good faith, fair dealing, loyalty and due care.

59.    As alleged in detail herein, the Officer Defendants breached their fiduciary duties by:

    a.    colluding with the Committee Defendants to backdate stock option grants;

    b.    colluding with the Committee Defendants to violate GAAP and Section 162(m);

    c.    colluding with the Committee Defendants to produce and disseminate to F5 shareholders and the market false financial

SHAREHOLDER DERIVATIVE COMPLAINT
Case No.:

Page 20

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA  98166
(206) 241-2875

statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

d.    colluding with the Committee Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

60.    The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

61.    The Committee Defendants breached their fiduciary duties by:

a.    colluding with the Officer Defendants to backdate stock option grants;

b.    colluding with the Officer Defendants to violate GAAP and Section 162(m);

c.    colluding with the Officer Defendants to produce and disseminate to F5 shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

d.    colluding with the Officer Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

62.    The Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

63.    As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the

SHAREHOLDER DERIVATIVE COMPLAINT
Case No.:

Page 21

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA  98166
(206) 241-2875

Company was required to incur and loss of funds paid to the Company upon exercise of options.

## COUNT II

### AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER

64.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

65.     Each of the Individual Defendants intentionally or recklessly employed devices, schemes, and artifices to defraud and engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Company.

66.     The Company relied upon the Individual Defendants' fraud in granting the Officer Defendants options to purchase shares of F5 common stock.

67.     As a direct and proximate result of the Individual Defendants' fraud the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

## COUNT III

### AGAINST THE OFFICER DEFENDANTS FOR UNJUST ENRICHMENT

68.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

SHAREHOLDER DERIVATIVE COMPLAINT
Case No.:

Page 22

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA  98166
(206) 241-2875

69.   The Officer Defendants were unjustly enriched by their receipt and retention of backdated stock option grants, as alleged herein, and it would be unconscionable to allow them to retain the benefits thereof.

70.   To remedy the Officer Defendants' unjust enrichment, the Court should order them to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized.

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A.   Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and statutory violations;

B.   Ordering the Officer Defendants to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized;

C.   Granting appropriate equitable relief to remedy Defendants' breaches of fiduciary duties;

D.   Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.   Granting such other and further relief as the Court deems just and proper.

SHAREHOLDER DERIVATIVE COMPLAINT
Case No.:

Page 23

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA  98166
(206) 241-2875

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 7, 2006                                    Respectfully submitted,


                              /s/ John G. Emerson                  .
                              John G. Emerson, WA Bar No. 30956
EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Seattle, WA  98166
Telephone:   (206) 241-2875
Facsimile:   (206) 241-1744
john@emersonpoynter.com

and

William B. Federman
FEDERMAN & SHERWOOD
120 North Robinson, Suite 2720
Oklahoma City, OK 73102
Telephone:   (405) 235-1560
Facsimile:   (405) 239-2112

Attorneys for Plaintiff

SHAREHOLDER DERIVATIVE COMPLAINT
Case No.:

Page 24

EMERSON POYNTER, LLP
16763 Maplewild Ave. SW
Burien, WA  98166
(206) 241-2875

## **VERIFICATION**

I, ___Glenn Hutton___, declare that I have reviewed the Complaint ("Complaint") prepared on behalf of F5 Networks Inc. (FFIV) and I authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder, and have been a holder, of common stock during the time period in which the wrongful conduct alleged and complained of in the Complaint was occurring.

May 31, 2006
_____
Date

*[signature]*
_____
Signature