UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re F5 NETWORKS, INC. DERIVATIVE LITIGATION.

Master File No. C06-794RSL

ORDER TO SHOW CAUSE

## I. INTRODUCTION

This matter comes before the Court on "Nominal Defendant F5 Networks, Inc.'s Motion to Dismiss Amended Complaint for Failure to Make Demand" (Dkt. #49). In its motion, nominal defendant F5 Networks, Inc. ("F5") requests dismissal of plaintiffs' derivative complaint because plaintiffs did not make a pre-litigation demand on F5's board of directors and plaintiffs have failed to plead particularized facts showing that demand was excused as futile. As set forth below, the Court orders the parties to show cause why the Court should not certify a question asking the Washington State Supreme Court to provide the substantive standard establishing when demand is excused under RCW 23B.07.400(2) in a shareholder derivative action against a Washington corporation.

## II. DISCUSSION

**A.  Background**

This action arises out of the recent publicity focused on companies that allegedly

ORDER TO SHOW CAUSE

backdated stock options as a form of compensation to high-level executives. On May 16, 2006, the Center for Financial Research and Analysis ("CFRA") issued a report entitled "Options Backdating, Which Companies Are At Risk?" in which CFRA reviewed the option prices of 100 public companies and, based upon an analysis of the exercise prices of option grants with reference to the companies' stock prices, concluded that 17% of the subject companies, were in CFRA's view, "at risk for having backdated option grants during the period 1997 to 2002." See Dkt. #54, Ex. 1 (F5's Form 10-K/A filed with the SEC on December 12, 2006) at 20. F5 was one of the 17 companies so identified. Id.; see also James Bandler et al., Criminal Probe Of UnitedHealth's Options Begins, Wall St. J., May 18, 2006, at C1 ("An accounting-research firm this week identified 17 companies it termed as having 'the highest risk of having backdated options.'"). Shortly thereafter, F5 announced that it had received a grand jury subpoena from the Eastern District of New York and a notice of informal inquiry from the Securities and Exchange Commission ("SEC"). See Dkt. #54, Ex. 1 at 10. This set off a rush to the courthouse.

In 2006, there were a total of six F5 related shareholder derivative actions pending before this Court: (1) Hutton v. McAdam, et al. (Case No. C06-794RSL); (2) Wright v. Amdahl, et al. (Case No. C06-872RSL); (3) Adams v. Amdahl, et al. (Case No. C06-873RSL); (4) Locals 302 and 612 of the Int'l Union of Operating Eng'rs-Employers Constr. Indus. Ret. Trust v. McAdam, et al. (Case No. 06-1057RSL) (hereinafter "Locals Trust"); (5) Easton v. McAdam, et al. (Case No. C06-1145RSL); and (6) Sommer v. McAdam, et al. (Case No. C06-1229RSL). On September 12, 2006, the Court remanded the Wright and Adams actions to King County Superior Court, and on September 28, 2006, the Court signed an order granting the parties' stipulation for remand in Sommer. See Dkt. #22 in C06-872; Dkt. #34 in C06-873; and Dkt. #18 in C06-1229. Wright, Adams, and Sommer were consolidated in King County Superior Court before the Honorable William L. Downing and have been stayed pending the federal court actions (see King County Superior Court Nos. 06-2-17195-1SEA; 06-2-19159-5SEA; and 06-2-

26248-4SEA). On October 2, 2006, the Court signed an order on the parties' stipulation in Hutton, Locals Trust, and Easton, consolidating these actions for all purposes, appointing lead plaintiff and lead counsel, and setting the schedule for filing a consolidated complaint. See Dkt. #37 in C06-794. Under this order, Locals 302 and 612 of the International Union of Operating Engineers-Employers Construction Industry Retirement Trust (hereinafter "Locals 302 and 612" or "lead plaintiff") was appointed lead plaintiff charged with filing a consolidated complaint. Id. at 3. On November 20, 2006, lead plaintiff filed a "Consolidated Verified Shareholders Derivative Complaint" (Dkt. #39) (hereinafter the "Complaint"). On February 28, 2007, F5 filed a motion to dismiss for failure to make demand. See Dkt. #49. On August 6, 2007, the Court granted the motion to dismiss with leave to amend because the Court found that it would not have been futile for plaintiffs to make a pre-litigation demand on F5's directors. See Dkt. #69 (Order Granting Nominal Defendant F5 Networks, Inc.'s Motion to Dismiss for Failure to Make Demand). On September 14, 2007, plaintiffs filed an amended consolidated verified shareholder derivative complaint. See Dkt. #74. F5 moved again to dismiss the complaint contending demand was not excused, and this motion is now pending before the Court for consideration. See Dkt. #80.

**B.     Analysis**

    **1.     Washington has not established a substantive demand futility standard.**

In this shareholder derivative action, F5 moves for a second time to dismiss plaintiffs' suit for failure to make pre-litigation demand on F5's board of directors. The purpose of a derivative action is to "place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." Kamen v. Kemper Fin. Serv., Inc., 500 U.S. 90, 95 (1991) (quotation marks and citation omitted). To prevent abuse of this remedy, however, shareholder derivative complaints are governed by the pleading requirements of Fed. R. Civ. P. 23.1(b), which states, in part: "[t]he complaint must . . . (3) state with particularity: (A) any effort by the plaintiff to obtain the

ORDER TO SHOW CAUSE                               -3-

desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." Id. In this case, plaintiffs do not allege that they made a demand on F5's board of directors. Instead, plaintiffs claim that demand was excused because it would have been futile. See, e.g., Dkt. #74 at ¶175 ("A pre-filing demand would be a useless and futile act").

"[A] court that is entertaining a derivative action . . . must apply the demand futility exception as it is defined by the law of the State of incorporation." Kamen, 500 U.S. at 108-109; In re Silicon Graphics Inc. Securities Litig., 183 F.3d 970, 990 (9th Cir. 1999) ("For [demand futility] standards, we turn to the law of the state of incorporation"). F5 was incorporated in Washington State, so Washington law applies on this issue. Washington has a procedural demand requirement set forth in RCW 23B.07.400(2), "Derivative proceedings procedure," which states:

> A complaint in a proceeding brought in the right of a corporation must be verified and allege with particularity the demand made, if any, to obtain action by the board of directors and either that demand was refused or ignored or why a demand was not made. Whether or not a demand for action was made, if the corporation commences an investigation of the charges made in the demand or complaint, the court may stay any proceeding until the investigation is complete.

Although RCW 23B.07.400(2) sets forth the procedural demand requirement, Washington courts have neither interpreted this provision nor adopted a substantive demand requirement.[1] See Kamen, 500 U.S. at 96 ("[T]he demand doctrine . . . clearly is a matter of 'substance' not 'procedure.'"). But, it is clear under Washington law that "[d]erivative suits are disfavored and

---

[1] At oral argument on August 1, 2007, F5's counsel noted the absence of Washington law concerning the substantive standard for when demand is excused. See Dkt. #84 (Transcript of proceedings) at 3:21-4:6 (F5's counsel stating, "We have here a federal judge [the undersigned] sitting in Washington applying Washington law because F5 is a Washington company, and we don't have a lot of Washington law. So the federal . . . Washington courts, also borrow substantially from Delaware but in this instance, we also have a substantial body of law that is developed in part because the Northern District of California has been the center of many of the decided cases. And those cases, I think, shed good light on how this Court should approach the interestedness element since it doesn't have much to look at in Washington law directly.") (emphasis added).

ORDER TO SHOW CAUSE                    -4-

may be brought only in exceptional circumstances." Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 147 (1987).

Courts in the Western District of Washington have generally assumed "the Washington State Supreme Court would likely adopt the substantive demand requirement and apply a similar, if not the same, exception for futility as that employed in Delaware." See In re Cray, 431 F. Supp. 2d 1114, 1120 (W.D. Wash. 2006); accord Schwartzman v. McGavick, 2007 U.S. Dist. Lexis 28962, at *12 (W.D. Wash. April 19, 2007) (citing In re Cray, 431 F. Supp. 2d at 1120 and following Delaware law given the parties' agreement); Fernandes v. Bianco, 2006 U.S. Dist. Lexis 42048, at *7 (W.D. Wash. June 22, 2006) (same).

In the August 6, 2007 order, this Court also looked to Delaware's substantive demand futility standard as persuasive authority. See Dkt. #69 at 9 ("Following In re Cray, the parties agree that Delaware's substantive demand requirement is persuasive authority here."). The Court then applied the Aronson v. Lewis, 473 A.2d 805 (Del. 1984) test to the facts as alleged in the complaint and found that it would not have been futile for plaintiffs to make a pre-litigation demand on F5's directors and therefore granted defendants' motion to dismiss but with leave to amend. Id.

The extent to which this Court should follow Delaware law has now come to a critical juncture in this case with the filing of plaintiffs' amended complaint and F5's second motion to dismiss because the degree to which this Court follows Delaware's substantive demand futility standard is potentially outcome determinative. In order for the Court to decide whether this matter should proceed, the Court needs to determine two threshold questions. First, the Court must decide the extent to which Washington follows Delaware's substantive standards for when demand is excused as announced in Aronson and Rales v. Blasband, 634 A.2d 927 (Del. 1993). Second, assuming Washington follows these Delaware decisions, the Court must determine the extent to which Washington follows the demand futility standard as articulated in Ryan v. Gifford, 918 A.2d 341 (Del. Ch. 2007) in the specific context of a derivative action alleging

ORDER TO SHOW CAUSE                -5-

stock option "backdating." As discussed below, however, the Court in its discretion determines that because F5 is a Washington corporation, both of these determinations are best considered through certification to the Washington State Supreme Court as authorized by RCW 2.60.020.

### 2. Does Washington follow Delaware's general demand futility standard?

Under Delaware law, there are exceptions to the demand requirement that flow from the two landmark Delaware Supreme Court decisions in Aronson and Rales. In Aronson, the Delaware Supreme Court promulgated the two-part "Aronson test," which holds that demand is futile and excused where "under the particularized facts alleged, a reasonable doubt is created that (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." Aronson, 473 A.2d at 814-15. If either part of the test is satisfied with respect to half or more of the board members at the time the complaint was filed, demand is excused. See Beneville v. York, 769 A.2d 80, 85-86 (Del. Ch. 2004). Under Rales, the Delaware Supreme Court rejected the application of the Aronson test when the board of directors upon which demand would be made did not approve the challenged transaction. In these situations, demand is excused if the well-pleaded allegations in the complaint give rise to reasonable doubt that the board can exercise "its independent and disinterested business judgment in responding to a demand." Rales, 634 A.2d at 933-34; see also Conrad v. Blank, 940 A.2d 29, 37 n.17 (Del. Ch. 2007).

Federal district courts, including the Court in this case, have assumed without direction from the Washington Supreme Court that the Supreme Court would likely adopt Delaware's substantive demand futility standard. Without instruction from the Washington Supreme Court, however, this assumption is speculation.[2]

---

[2] See, e.g., Boland v. Engle, 113 F.3d 706, 712 (7th Cir. 1997) ("Although Delaware corporate law is undoubtedly persuasive authority, Boland's argument that the Indiana Supreme Court would follow Delaware . . . is not convincing. Rather, we surmise that the highest court in Indiana would today be persuaded by the general trend in the law towards narrowing, if not eliminating, the exceptions from the demand requirement. Eleven states have statutorily imposed a universal demand requirement. And both the case law and the academic commentary have been moving strongly in that direction as well.")

ORDER TO SHOW CAUSE -6-

### 3. If Washington follows Delaware, does Washington also follow <u>Ryan v. Gifford</u> in cases where the improper "backdating" of stock options has been alleged?

In derivative actions alleging the improper "backdating" of stock options, there are two general approaches courts have taken concerning the pleading standard to determine whether demand was excused: (1) the approach taken in <u>Ryan v. Gifford</u>, 918 A.2d 341 (Del. Ch. 2007), and (2) the approach taken in cases like <u>In re CNET Networks, Inc. S'holder Derivative Litig.</u>, 483 F. Supp. 2d 947, 958 (N.D. Cal. 2007) that distinguish <u>Ryan</u> and engage in a searching inquiry into the individual option grants at issue.

This Court in its August 6, 2007 order chose the latter approach and engaged "in a detailed, grant-specific analysis" and ultimately concluded based on this analysis that plaintiffs had failed to establish reasonable doubt that the option grants at issue had been "backdated." <u>See</u> Dkt. #80 at 5. The Court found that plaintiffs had not made a particularized showing, in part, because of the "lack of consistency in plaintiffs' claims." <u>See</u> Dkt. #69 at 23-24. In their amended complaint, plaintiffs have substantially cured the inconsistencies in their claims concerning alleged backdating. However, the alleged facts supporting their claims remain substantially the same as those alleged in their original complaint. As a result, the central issue before the Court on F5's second motion to dismiss is whether plaintiffs' allegations are sufficient under Washington law to demonstrate that demand was futile, which in turn, requires the Court to determine the extent to which the Washington Supreme Court would adopt the <u>Ryan</u> analysis in the specific stock option backdating context. In <u>Ryan</u>, a Delaware trial-level court concluded:

> Plaintiff here points to specific grants, specific language in option plans, specific public disclosures, and supporting empirical analysis to allege knowing and purposeful violations of shareholder plans and intentionally fraudulent public disclosures. Such facts, in my opinion, provide sufficient particularity in the pleading to survive a motion to dismiss for failure to make demand pursuant to Rule 23.1

<u>Ryan</u>, 918 A.2d at 355 & n.34 ("Defendants argue repeatedly that plaintiff's allegations

(internal citations omitted).

ORDER TO SHOW CAUSE                -7-

ultimately rest upon nothing more than statistical abstractions. . . . Given the choice between improbably good fortune and knowing manipulation of option grants, the Court may reasonably infer the latter, even when applying the heightened pleading standards of Rule 23.1."); see Edmonds v. Getty, 524 F. Supp. 2d 1267, 1276 (W.D. Wash. 2007) ("This court does not find Getty Images' arguments persuasive; instead, it adopts the reasoning in Ryan and finds that Mr. Edmonds alleged facts sufficient to reasonably infer that backdating rather than innocent bookkeeping errors occurred."). In their response and amended complaint, plaintiffs assert that they have met the pleading requirement as set forth in Ryan and as adopted by Judge Robart in Edmonds. See Dkt. #86 at 11; Dkt. #74 (Amended Complaint) at ¶73 (stating "[a]s Chancellor Chandler articulated in his seminal decision in Ryan, a pattern of backdating is alleged with sufficient particularity when the dates, prices, recipients and the plan language violated are identified.").

**C.  Certifying a question to the Washington State Supreme Court is appropriate**

RCW 2.60.020 provides:

> When in the opinion of any federal court before whom a proceeding is pending, it is necessary to ascertain the local law of this state in order to dispose of such proceeding and the local law has not been clearly determined, such federal court may certify to the supreme court for answer the question of local law involved and the supreme court shall render its opinion to answer thereto.

Based on the discussion above, the Court concludes that the appropriate course of action in this case is to certify a question to the Washington Supreme Court in accordance with RCW 2.60.020 because a substantive demand standard has not been established under Washington law and because the answer may be dispositive in this case. Furthermore, should the Washington State Supreme Court answer the certified question,[3] the answer will also have far-reaching effects given the recent number of shareholder derivative actions filed in this district,[4] and the

---

[3] Whether to answer the certified question is within the discretion of the Washington State Supreme Court. See Broad v. Mannesmann Anlagenbau, A.G., 141 Wn.2d 670, 676 (2000).

[4] See, e.g., Sexton v. Van Stolk (Case No. 07-1782RSL).

ORDER TO SHOW CAUSE            -8-

state-court actions that have been stayed pending the outcome of this federal action.[5] See Keystone Land & Dev. Co. v. Xerox Corp., 353 F.3d 1093, 1097 (9th Cir. 2003) (concluding that the appropriate course of action was to certify the question because the issue was "not entirely settled in Washington, and because if clarified definitively by the Washington State Supreme Court, the answer will have far-reaching effects").

Generally, states have adopted one of three separate substantive demand tests. First, the majority of states that have considered the issue have adopted, either by statute[6] or by judicial decision,[7] what has been described as the "universal demand" requirement from the Model Business Corporation Act.[8] Second, other states look to Delaware's demand futility test as set

---

[5] See Jeffrey S. Facter, Article: Fashioning a Coherent Demand Rule for Derivative Litigation in California, 40 Santa Clara L. Rev. 379, 381 n.9 (2000) (arguing for California to adopt its own clearly defined demand rule rather than adopting Delaware law on an ad hoc basis, and attributing the dearth of California case law on demand futility to the fact that the issue inherently evades ordinary appellate review because either (1) the motion to dismiss on demand futility is denied, in which case the litigation lasts for years before judgment is entered or the case is settled, or (2) if the motion to dismiss is granted there is an appealable order "but the plaintiff rarely has the incentive to take an appeal because the option of proceeding to make a demand on the board is a much lower cost alternative than prosecuting an appeal.").

[6] See, e.g., Ariz. Rev. Stat. § 10-742 (2008).

[7] See Cuker v. Mikalauskas, 692 A.2d 1042, 1050 (Pa. 1997); Drain v. Covenant Life Ins. Co., 712 A.2d 273 (Pa. 1998) ("In Cuker this Court adopted the American Law Institute Principles of Corporate Governance with respect to standing to maintain a derivative action. . . . The shareholder must make a written demand upon the corporation's board of directors and request it to prosecute the action or take corrective measures. Demand on the board is excused only if the shareholder shows that irreparable injury to the corporation would otherwise result, and the demand should be made promptly after commencement of the action. If irreparable injury would not result, the court should dismiss the derivative action that is commenced before the response of the board to a demand unless the board does not respond within a reasonable time.") (emphasis added).

[8] See Mod. Bus. Corp. Act § 7.42 (2005) ("No shareholder may commence a derivative proceeding until: (1) a written demand has been made upon the corporation to take suitable action; and (2) 90 days have expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period."); see also Todd A. Murray & Lyndon F. Bittle, Article: Emerging Issues Raised by Derivative Shareholder Actions Involving

ORDER TO SHOW CAUSE                -9-

forth in Aronson and Rales.  See, e.g., Shoen v. SAC Holding Corp., 137 P.3d 1171, 1184 (Nev. 2006) ("[W]e adopt the test described in Aronson, as modified by Rales").  Finally, Maryland, departing from Delaware law, crafted its own "very limited exception" test.[9]

In its motion, F5 asserts that the demand futility standard set forth in the Court's August 6, 2007 order is the binding "law of the case" for purposes of analyzing plaintiffs' amended complaint.  See Dkt. #80 at 5-6 ("The Order is now the law of the case, and there is no reason or basis whatsoever to revisit or change the well-reasoned demand-futility standards the Court has established.") (citing United States v. Alexander, 106 F.3d 874, 877 (9th Cir. 1997); Dkt. #89 at 2 ("The Court did not err, and there are no grounds for reversing the law of the case, as clearly established by the Court in its Order.").  The law of the case doctrine, however, does not trump the certification process under the circumstances here.  The authorizing statute, RCW 2.60.020, does not require certification at the beginning of the litigation or preclude certification after the Court has issued interlocutory rulings:  as long as the proceeding is still pending in the district court, certification remains an option.  The district court's power to reconsider or revise prior orders is limited by the law of the case doctrine only where the court has been divested of jurisdiction over the matter or has unduly delayed reconsideration.

> The law of the case doctrine is not an inexorable command, nor is it a limit to a court's power.  Rather, application of the doctrine is discretionary. . . .  The law of the case doctrine is wholly inapposite to circumstances where a district court seeks to reconsider an order over which it has not been divested of jurisdiction. . . . *All rulings of a trial court are subject to revision at any time before the entry of*

---

Foreign Corporations Headquartered in Texas: Making Sense of the Interaction Between Texas Procedures and Substantive Law, 39 Tex. Tech. L. Rev. 1, 15-16 (2006) (discussing the fact that Texas and at least 20 other states have adopted section 7.42 of the Model Act).

[9] See Werbowsky v. Collomb, 362 A.2d 123, 144 (Md. 2001) ("We adhere for the time being, to the futility exception, but, consistent with what appears to be the prevailing philosophy throughout the country, regard it as a very limited exception, to be applied only when the allegations or evidence clearly demonstrate, in a very particular manner, either that (1) a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation, or (2) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule.").

ORDER TO SHOW CAUSE                             -10-

> *judgment. . . .* The doctrine simply does not impinge upon a district court's power to reconsider its own interlocutory order provided that the district court has not been divested of jurisdiction over the order.

United States v. Smith, 389 F.3d 944, 949 (9th Cir. 2004) (internal citations and quotation marks omitted, emphasis in cited case). The Smith court distinguished the case upon which F5 relies, United States v. Alexander, 106 F.3d 874 (9th Cir. 1997), on the ground that reconsideration in that case was untimely granted only after the jury was unable to reach a verdict and the court had declared a mistrial. Accordingly, F5's argument concerning the binding effect of the Court's August 6, 2007 order is not relevant in the Court's discretion to certify a question regarding the applicable demand futility standard to the Washington Supreme Court as authorized by RCW 02.60.020.

### III. CONCLUSION

Based on the reasoning above, the parties are ORDERED TO SHOW CAUSE why the following question should not be certified to the Washington State Supreme Court under RCW 2.60.020:

> "What test does Washington apply to determine whether allegations made pursuant to RCW 23B.07.400(2) by a shareholder seeking to initiate derivative litigation on behalf of a Washington corporation excuse that shareholder from first making demand on the board of directors to bring that litigation on behalf of the corporation?; and
>
> If Washington follows Delaware's demand futility standard, does it also follow the reasoning of Ryan v. Gifford, 918 A.2d 341 (Del. Ch. 2007) in cases where the improper backdating of stock options has been alleged?"

The parties shall SHOW CAUSE in response to this ORDER on or before **Friday, June 6, 2008** in a filing not to exceed 12 pages. The Clerk is directed to place this Order to Show Cause on the Court's calendar for Friday, June 6, 2008.

DATED this 20th day of May, 2008.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge